of that of his co-employé. The court charged, in accordance with the undisputed evidence, that the accident would not have occurred if the engineer had not moved the forward cars; and also that neither the engineer nor any one else had any right to move the front portion of the train or the detached cars until after a signal had been given by the conductor or trainman. He also charged that if the negligence, either of the engineer, fireman, or conductor, caused the accident, the plaintiff could not recover. The evidence leaves no doubt that either plaintiff's intestate or the conductor signaled the forward portion of the train to come back, or else that the engineer or fireman started the train back without any signals. If either the intestate or the conductor so signaled while intestate was at work under the cars so that he would be injured by the collision, it was clearly either negligence of the intestate himself or of a co-employé, which, under the charge, would bar a recovery. If, upon the other hand, the engineer, in disobedience of the rule already stated, and without any signal or authority, ran his portion of the train against the cars under which intestate was working, it was an act of negligence which would prevent a recovery, as charged by the court. Apparently the trouble was caused by this disobedience of rules. The conductor was called as a witness by plaintiff, and there was nothing in his evidence to indicate that he gave any signal, and it is likewise strenuously urged by counsel that the intestate gave none. If this be so, then the engineer, through some mistake or carelessness, caused the accident, for which no recovery could be had.

Various other reasons are urged by the appellant for a reversal of the judgment, but the views already reached by us upon the points discussed render it unnecessary to consider them.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event upon questions of law only, the facts having been examined, and no error found therein. All concur.

---

(109 App. Div. 192.)

AMERICAN SEEDING MACH. CO. v. STEARNS et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1905.)

1. SALES—CONTRACT OF SALE OR CONSIGNMENT FOR SALE—QUESTION FOR JURY.

Where an instrument is in form a contract of sale, an additional clause, stating that "good purchasers' notes * * * will be accepted in settlement," is not so decisive as to change the contract, as a matter of law, to one for shipment upon a commission; but its meaning becomes a mixed question of law and fact, to be determined by reference to the acts of the parties thereunder.

2. SAME—ACCRUAL OF RIGHT OF ACTION FOR PRICE.

An action for the price of goods, not brought until after October 1st, was not prematurely brought, where by the terms of the contract spring sales were to be settled by October 1st, and the article involved was to be shipped February 1st, and had come into defendant's possession in June or July.

Appeal from Cattaraugus County Court.

Action by the American Seeding Machine Company against Lee

Stearns and another.   From a judgment entered upon a direction of nonsuit, plaintiff appeals.   Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Ernest H. Woodruff, for appellant.
James E. Bixby, for respondent.

HISCOCK, J.   This action was brought to recover the purchase price of a drill claimed to have been sold by plaintiff to defendants. The defenses pleaded embraced the ones that the action was prematurely brought; that plaintiff rescinded the contract of sale by retaking part of the machinery; that the drill was shipped to defendants as agents upon commission.   The learned county judge seems to have dismissed the complaint upon the last ground, and we think therein he committed error, for which the judgment must be reversed.

The drill was shipped under a written contract, which, except for one expression, imports an absolute and unqualified sale, with an unconditional obligation upon the part of defendants to pay.   It is headed as a "Sale Contract," and by it "the American Seeding Machine Co. * * * sells, and Stearns Brothers * * * buys, agricultural implements, as stated in annexed order, at prices and terms as stated."   Then follows a description of the thing sold and a statement of manner of payment and various discounts, which are all in terms appropriate to an absolute sale.   In addition, there is a clause relied upon by defendants, reading as follows: "Additional terms:   For wheat drills, good purchasers' notes, indorsed by agents, drawing interest, * * * will be accepted in settlement," etc.   We are not able to find any very clear evidence that the drill involved here was a wheat drill, and therefore within the terms of this clause, but shall assume that it was.   In the absence of ambiguity and extrinsic evidence altering the rule, it would be our duty to interpret this contract, and determine the rights of the parties thereunder as a matter of law.   If we follow this course, we should hold that the contract as an entirety was one of purchase and sale, and not of shipment upon commission, and that the plain and unequivocal meaning of the instrument in its other provisions was not overturned by the use of the word "agents" in the clause quoted.   The form of contract employed was apparently one in general use by plaintiff.   It granted certain territory to the persons taking the latter's implements.   They were in a popular sense "agents" for the sale of plaintiff's wares in that territory, and we think the description of them by that word was indicative of some such feature, rather than of a legal relation of agency to plaintiff, which turned terms of absolute sale into those of shipment upon commission.   It very likely was understood that defendants were buying for the purpose of selling again, rather than for their own use, and a proper situation was presented for dealing upon consignment if so desired; but we should not be willing to say merely from the written engagements that this was the intention.   It is of some significance that the clause especially referred to by defendants, although allowing an agent to turn his customers' notes over to plaintiff in settlement, still required his indorsement

thereof, thus reserving his personal responsibility as upon an absolute sale. We think that the term "agents" and language used in connection therewith are not, of themselves, so decisive in meaning or controlling in effect' as to change what otherwise seems to be the clear meaning of the instrument as one of absolute sale. Goldsmith v. Lewin, 8 N. Y. St. Rep. 313; McKecknie et al. v. Ward, 58 N. Y. 541, 545, 17 Am. Rep. 281.

It is, however, urged that subsequent to the execution of the contract, certain things took place between the parties which throw light upon its interpretation and upon the intentions of the parties to be gathered therefrom. While we do not give to these events the conclusiveness, as matter of law, which counsel does, we still do think that they are sufficient, in connection with the alleged uncertainty of the language used in the agreement, to present an issue as to the intention of the parties. After the drill had come into the possession of the defendants, most of its parts were destroyed by fire. Subsequently plaintiff's agent called for the purpose of settling the account, and he proposed to take back and credit upon account some wheels which were left. Before defendants had finally assented to this proposition, the agent did ship back to plaintiff said wheels, writing to it to credit the value of the same upon the account, which was done. This reshipment without consent of defendants furnished some evidence from which a jury might say that the plaintiff thus acted because it regarded the contract as preserving in it the title, while defendants had possession as agents upon commission, and thus giving to it the right to retake without consent. It is settled that where a contract is ambiguous and uncertain, the acts of the parties thereunder may be considered sometimes in interpreting its meaning and determining their intentions, and such interpretation then becomes a mixed question of law and of fact. McClanathan v. Friedel, 85 Hun, 175, 32 N. Y. Supp. 588; Kenyon v. K. T. & M. M. A. Assn., 122 N. Y. 247, 25 N. E. 299; Dwight v. Germania Life Ins. Co., 103 N. Y. 341, 353, 8 N. E. 654, 57 Am. Rep. 729. We think this case, upon the evidence as now presented, comes within this rule.

It also was and is urged that this action was prematurely brought; but we think this contention is not borne out by the evidence. By the terms of the contract, spring sales were to be settled for by October 1st. The contract provided that this drill was to be shipped February 1st, and the evidence discloses that it had come into defendants' possession before June or July, when the fire occurred. Presumptively, therefore, there was a spring sale, requiring settlement before the action was commenced.

For the foregoing reasons, as stated, the disposition of the case in the court below adversely to plaintiff, as matter of law, was error.

Judgment reversed, and new trial granted, with costs to abide event. All concur.